# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 08-219V
### Filed: November 19, 2014

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| JENNY C. SHOOP, parent of | * | |
| JACOB P. SHOOP, a minor, | * | |
| | * | |
| Petitioner, | * | Motion for Reconsideration; |
| v. | * | Motion for Relief from Judgment; |
| | * | Vaccine Rule 36; RCFC 59; |
| SECRETARY OF HEALTH | * | RCFC 60 |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Jenny C. Shoop, Devalan, WI, *pro se* petitioner.
Katherine C. Esposito,[1] U.S. Department of Justice, Washington, DC, for respondent.

### RULING DENYING PETITIONER'S MOTION FOR POST-JUDGMENT RELIEF[2]

**Vowell,** Chief Special Master:

On October 14, 2014, the court received a letter from petitioner asking that her claim, dismissed in 2011 for failure to prosecute, be reconsidered. Petitioner discusses the substance of her claim but neglects to indicate why she failed to respond to a series of orders issued in the case from September 2010 through the end of 2011.

Petitioner's letter is construed as a motion for reconsideration pursuant to Rule 59 of the Rules of the United States Court of Federal Claims ["RCFC"] and a motion for relief from judgment pursuant to RCFC 60.[3] Because the special master formerly assigned to the case is no longer at the court, the case was reassigned to me on October 27, 2014.

---

[1] Ms. Esposito is attorney of record for respondent but no longer works for the Vaccine Litigation Section of the Department of Justice. No new counsel for respondent has been designated.

[2] Because this unpublished ruling contains a reasoned explanation for the action in this case, I intend to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[3] Vaccine Rule 10(e) allows either party to file a motion for reconsideration <u>prior</u> to the entry of judgment and is not applicable here.

**For the reasons discussed below, petitioner's motion is DENIED.**

## I. Relevant Procedural History.

On March 27, 2008, petitioner filed a "Short-Form Petition for Vaccine Compensation"[4] under the National Childhood Vaccine Injury Act[5] ["Vaccine Act" or "Act"] on behalf of her son, Jacob.  It was included in the Omnibus Autism Proceeding ["OAP"] and effectively stayed while general causation issues were litigated in the OAP test cases.[6]

During this time, petitioner was ordered to file all required medical records and to establish that her claim was timely filed.  Order, issued Apr. 4, 2008, at 1-3, 7; *see* § 11(c)(2) (the required medical records); § 16 (the Vaccine Act's statute of limitations). Petitioner filed medical records and a statement regarding the onset of Jacob's symptoms on June 2, 2008.  *See* Petitioner's Exhibits ["Pet. Ex."] 1-30 (Petitioner's onset statement is titled "Cover Page.")

Approximately one month later, respondent filed a motion to dismiss, arguing the petition was filed "over twelve years after the expiration of the statutorily prescribed limitations period."  Respondent's Motion to Dismiss at 1.  Petitioner filed a response to the motion to dismiss on December 4, 2008.  No ruling was made on the motion to dismiss, pending resolution of the test cases.  Additionally, potentially dispositive cases involving the application of the statute of limitations in autism cases were pending before the Court of Federal Claims and the Federal Circuit.

After the statutory 240-day period for the issuance of a decision expired, petitioner was asked if she wished to continue in the vaccine program.[7]  Petitioner

---

[4]  By electing to file a Short-Form Autism Petition for Vaccine Compensation, petitioners alleged that:

> [a]s a direct result of one or more vaccinations covered under the National Vaccine Injury Compensation Program, the vaccinee in question has developed a neurodevelopmental disorder, consisting of an Autism Spectrum Disorder or a similar disorder. This disorder was caused by a measles-mumps-rubella (MMR) vaccination; by the "thimerosal" ingredient in certain Diphtheria-Tetanus-Pertussis (DTP), Diphtheria-Tetanus-acellular Pertussis (DTaP), Hepatitis B, and Hemophilus Influenza Type B (HIB) vaccinations; or by some combination of the two.

Autism General Order #1, filed July 3, 2002, Exhibit A, Master Autism Petition for Vaccine Compensation at 2.

[5]  The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C.A. §§ 300aa-10 et. seq. (2006).  Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

[6] A detailed discussion of the OAP can be found at *Dwyer v. Sec'y, HHS,* No. 03-1202V, 2010 WL 892250, at *3 (Fed. Cl. Spec. Mstr. Mar. 12, 2010).

[7] Under the Vaccine Act, a special master is instructed to issue a decision "as expeditiously as practicable but not later than 240 days."  § 12(d)(3)(A)(ii).  If a special master fails to issue a decision within 240 days,

indicated that she wished "to have [her] petition remain before the special master." Notice, filed Jan. 8, 2009.

The last decisions were issued in the OAP "test cases" on March 12, 2010.[8]  In light of the conclusion reached in all test cases, that there was insufficient evidence that vaccines caused autism, petitioner was ordered to inform the court whether she wished to proceed with her claim.  Order, issued Sept. 22, 2010, at 2-3.[9]  Petitioner failed to respond to the order.

On December 3, 2010, petitioner was ordered to inform the court whether she wished to proceed with her claim or explain why her claim should not be dismissed for failure to prosecute.  *See* Show Cause Order #1 at 1.  The order was sent to petitioner at her address of record by certified mail and was returned as undeliverable on January 6, 2011.[10]

On February 16, 2011, petitioner was ordered to provide the court with a valid address and telephone number or explain why her claim should not be dismissed for failure to prosecute.  *See* Show Cause Order #2 at 2.  Copies of the September 22 and December 3 orders were included as attachments, and the orders were sent by regular mail to petitioner's address of record and a similar address discovered after a search for petitioner's contact information was performed.[11]  *Id.* at 1.  Again, petitioner failed to respond.

---

the special master must notify the petitioner so the petitioner may withdraw the petition in accordance with § 21(b) or choose to remain before the special master.  § 12(g).

[8] The Theory 1 cases are *Cedillo v. Sec'y, HHS*, No. 98-916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *aff'd*, 89 Fed. Cl. 158 (2009), *aff'd*, 617 F.3d 1328 (Fed. Cir. 2010); *Hazlehurst v. Sec'y, HHS*, No. 03-654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *aff'd*, 88 Fed. Cl. 473 (2009), *aff'd*, 604 F.3d 1343 (Fed. Cir. 2010); *Snyder v. Sec'y, HHS*, No. 01-162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *aff'd*, 88 Fed. Cl. 706 (2009). Petitioners in *Snyder* did not appeal the decision of the U.S. Court of Federal Claims. The Theory 2 cases are *Dwyer*, 2010 WL 892250; *King v. Sec'y, HHS*, No. 03-584V, 2010 WL 892296 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); *Mead v. Sec'y, HHS*, No. 03-215V, 2010 WL 892248 (Fed. Cl. Spec. Mstr. Mar. 12, 2010). The petitioners in each of the three Theory 2 cases chose not to appeal.

[9] Although the order required only that petitioner indicate her intent, it explained that, if continuing, a second order would be issued requiring petitioner to provide a theory of causation, a medical expert's opinion, and other evidence supporting her claim.

[10] A search on the U.S. postal service website using the order's tracking number produced no results.  A call to the postal service confirmed that tracking information was no longer available as such information is maintained for six months to a year.  The envelope which was returned with the order appears to indicate that the order was received by petitioner's local post office on December 6, 2010 and delivery was attempted on December 13 and 21, 2010.

[11] The street address and city in both addresses were the same but the street number was different.

A fourth order was issued on June 16, 2011.  Petitioner again was ordered to provide the court with a valid address and telephone number or to show cause why her claim should not be dismissed for failure to prosecute.  Show Cause Order #3 at 2.  This order also was sent to the same two addresses as the February 16, 2011 order but was sent by certified mail.  *Id.* at 1-2.  The order was not returned to the court but I am unable to determine if it was delivered to petitioner.[12]  Petitioner again failed to respond.

The claim was dismissed due to a failure to prosecute on November 22, 2011.  Judgment entered on December 28, 2011.

On October 14, 2014, petitioner filed the instant motion.  Discussing the facts of the case and events which transpired, petitioner argues that the medical knowledge now available supports her claim.  Petitioner's Motion ["Pet. Motion"] at 1.  Citing her financial circumstances and inability to procure Medicaid approval for a desired medical treatment, she asks the court to award compensation.  *Id.* at 2.

## II.  Legal Standards.

The Vaccine Rules, which are found at Appendix B to the RCFC, govern all Vaccine Act proceedings.  Vaccine Rule 1(a).  If a matter is not specifically addressed by the Vaccine Rules, the special master may apply the RCFC, so long as those rules are not inconsistent with the Vaccine Rules and the purpose of the Vaccine Act.  Vaccine Rule 1(b)-(c).

Vaccine Rule 36 and RCFC 59 and 60 all address post-judgment relief.  Vaccine Rule 36(a) allows a party to file a motion for reconsideration pursuant to RCFC 59 or to seek relief from judgment pursuant to RCFC 60.  RCFC 59 and 60 are identical to Rules 59 and 60 of the Federal Rules of Civil Procedure.  Thus, cases involving Rules 59 and 60 of the Federal Rules of Civil Procedure are informative in determining the meaning and intent of RCFC 59 and 60.

In determining whether a judgment should be set aside or altered, "the need for finality of judgments" must be balanced against "the importance of ensuring that litigants have a full and fair opportunity to litigate" when determining whether to grant relief.  *Kennedy v. Sec'y, HHS*, 99 Fed. Cl. 535, 539 (2011) (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010)); *see also Bridgham by Libby v. Sec'y, HHS*, 33 Fed. Cl. 101, 104 (1995) (discussing the "tension between the goals of ensuring that the court's judgment appropriately reflects the adjudication of the parties' rights and of providing the parties with certainty as to those rights").

Rule 59 allows a judge or special master to reconsider all or some of the issues in a case.  RCFC 59(a)(1).  The court may "open the judgment if one has been entered,

---

[12] Like the December 3, 2010 order, the tracking information for this order is no longer available.  *See supra* note 9.

take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."  RCFC 59(a)(2).  With the exception of a motion based on "any fraud, wrong, or injustice . . . done to the United States" (RCFC 59(a)(1)(C)), a motion must be filed with 28 days of the date judgment entered.  RCFC 59(b).

A motion for relief under RCFC 60(b)[13] "seeks to set aside a final decision and it is incumbent upon the motion-filer to demonstrate that he or she is entitled to that relief." *Kennedy*, 99 Fed. Cl. at 550.  Relief from final judgment under RCFC 60 can be obtained for the specific reasons listed in RCFC 60(b)(1)-(5) or the "catch-all" provision at RCFC 60(b)(6).  "A motion under RCFC 60(b) must be made within a reasonable time-and for reasons (1), (2), and (3) no more than a year after the entry of judgment." RCFC 60(c)(1).  A motion may be filed later than one year after judgment has entered if filed for reasons (4) or (5) or the catch-all provision (6).

The catch-all provision allows a judgment to be vacated "whenever such action is appropriate to accomplish justice."  *Klapprott v. United States*, 335 U.S. 601, 615 (1949).  However, extraordinary circumstances must warrant such relief.  *See Ackerman v. United States*, 340 U.S. 193, 198 (1950) (denying relief after finding the extraordinary circumstances in *Klapprott* did not exist).  When determining if extraordinary circumstances exist, one must consider the level of fault which can be attributed to the individual seeking relief.  "In a vast majority of cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault . . . ."  *CNA Corp. v. United States*, 83 Fed. Cl. 1, 8 (2008) (citing *Moore's Federal Practice* § 60.48[3][b] (3rd ed. 2008)).

In *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396 (5th Cir. 1981), the court listed eight factors important in determining whether relief under Rule 60(b) is warranted:

> (1) [t]hat final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5*)* whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Seven Elves*, 635 F.2d at 402.

---

[13] RCFC 60(a) allows the court to correct a mistake due to a clerical error, oversight, or omission and is not applicable here.

Courts have weighed the merits of the underlying claim in determining whether relief from judgment is appropriate.  *See, e.g., Curtis v. United States*, 61 Fed. Cl. 511, 512 (2004) ("[A] litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise.") (quoting *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992)).

### III.  Evaluating Petitioner's Motion.

Petitioner filed the instant motion almost three years after judgment entered, too late to seek relief under RCFC 59 and RCFC 60(b)(1)-(3).  Even if the motion had been timely filed, the difficulties Jacob endured and petitioner's inability to pay for desired medical treatment are not a basis for granting relief.  In nearly every Vaccine Act case, the vaccinee has suffered an injury that has persisted over time.

A motion for relief under subsections (3), (4), and (5) may be filed more than one year after judgment has entered, but petitioner does not claim any of the changed circumstances regarding the judgment which are listed in subsections (4) or (5).[14]  Thus, petitioner's only available remedy for relief is the catch-all provision found at RCFC 60(b)(6).

A.  Extraordinary Circumstances.

As discussed in Section II, the level of blame attributable to petitioner should be considered when determining if the extraordinary circumstances required for relief under RCFC 60(b)(6) exist.  Here, petitioner's claim was dismissed because she failed to respond to a series of orders issued from late 2010 through 2011, but she has provided no reason or justification for her lack of response.  It appears that petitioner and Jacob may be living with her mother since she asked that correspondence be sent to her at her mother's address.  Pet. Motion, filed Oct. 14, 2014, at 2.  However, she does not indicate if or when she moved.  Even if petitioner moved, it is her responsibility to maintain her correct contact information with the court.[15]

The medical records and statements filed describe the difficult circumstances petitioner and her mother face as they care for Jacob.  However, these circumstances existed when petitioner filed her claim and responded to every order issued by the court from 2008 through 2009.  Petitioner does not explain why she failed to respond to the orders issued in 2010 and 2011.

---

[14] For example, relief from judgment may be granted if the judgment is void, satisfied, or was "based on an earlier judgment that has been reversed or vacated."  RCFC 60(b)(4)-(5).

[15] In the Vaccine Rules, the terms used for the attorney of record apply to *pro se* petitioners as well. Vaccine Rule 14(a)(2).  The Rules require that the attorney of record "promptly file with the clerk and serve on the court . . . a notice of any change in the attorney's contact information."  Vaccine Rule 14(b)(2).

B.  Merits of Petitioner's Claim.

Even if petitioner could show extraordinary circumstances exist which would warrant relief under RCFC 60(b)(6) (or any other provision of RCFC 60(b)), she cannot prevail on the merits because it is clear her claim was untimely filed.  Petitioner filed Jacob's medical records and several statements providing a summary of events concerning the onset of Jacob's condition.  I have reviewed and considered the entire record. The evidence does not support petitioner's assertions that Jacob's autism was vaccine-caused or that he suffered an acute encephalopathy.  Moreover, the record establishes that the claim was filed approximately 12 years after the expiration of the statute of limitations.

Petitioner indicates that when Jacob exhibited his first symptoms of autism, "physicians, due to [a] lack of medical studies, were restricted in diagnosing vaccine injury related autism."  Pet. Motion, filed Oct. 14, 2014, at 1.  Even if that were a sufficient reason to grant relief, when using the term "vaccine injury related autism," petitioner makes a significant and unsupported assertion.  In filing a short-form petition, petitioner alleged that Jacob's condition was caused by the measles, mumps, and rubella ["MMR"] vaccine, the "thimerosal" ingredient in the diptheria-tetanus-pertussis ["DTP"] or haemophilus influenza type b ["Hib"] vaccines or a combination of the two. *See* Autism General Order #1, issued July 3, 2002, Exhibit A, Master Autism Petition for Vaccine Compensation at 2.  Causation was not established regarding these theories during the OAP and petitioner has provided no new evidence to support such claims.

Petitioner first raised the possibility of a Table Injury[16] in her response to respondent's motion to dismiss.  Petitioner's Response, filed Dec. 4, 2008, at 2.  Claiming that Jacob's symptoms met the definition of an acute encephalopathy,[17]

---

[16] A "Table" injury is an injury listed on the Vaccine Injury Table, 42 C.F.R. § 100.3, corresponding to the vaccine received within the time frame specified.  Petitioner is alleging Jacob suffered from an encephalopathy.  42 C.F.R. § 100.3(a)II.B and III.B. For a vaccinee to have suffered a Table encephalopathy, the Qualifications and Aids to Interpretation ["QAI"] section of the Vaccine Injury Table requires that a vaccinee has suffered an acute encephalopathy and a chronic encephalopathy persisting for more than 6 months.  42 C.F.R. § 100.3(b)(2).

[17] The QAI to the Vaccine Injury Table are located at 42 C.F.R. § 100.3(b) and contain definitions for the terms used in the Table.  *See Althen v. Sec'y, HHS*, 58 Fed. Cl. 270, 280 (2005), *aff'd*, 418 F.3d 1274 (Fed. Cir. 2005) (noting that the QAI should be used to interpret key terms found in the Table). An acute encephalopathy is defined as "one that is sufficiently severe to require hospitalization (whether or not hospitalization occurred)."  42 C.F.R. § 100.3(b)(2)(i).  For a child younger than 18 months of age, presenting without an associated seizure event, an acute encephalopathy is indicated "by a significantly decreased level of consciousness . . . lasting for at least 24 hours."  42 C.F.R. § 100.3(b)(2)(i)(A).  A significantly decreased level of consciousness is indicated by the presence of one of three clinical signs for a period of at least 24 hours: "(1) Decreased or absent response to environment (responds, if at all, only to loud voice or painful stimuli); (2) Decreased or absent eye contact (does not fix gaze upon family members or other individuals); or (3) Inconsistent or absent responses to external stimuli (does not recognize familiar people or things)." 42 C.F.R. § 100.3(b)(2)(i)(D).  Sleepiness, irritability (fussiness), high-pitched and unusual screaming, persistent inconsolable crying, and bulging fontanelle are not, alone, or in combination, a demonstration of an acute encephalopathy.  42 C.F.R. § 100.3(b)(2)(i)(E).

petitioner alleged that he experienced a

> change of conscience [sic] behavior; turning violent such as grabbing [a]
> knife in a threatening motion toward grandmother, panic stricken running
> around, screaming inconsolably, attacking[,] scratching, holding his ears
> and later noticable [sic] swelling above ears (unsure how long after the
> swelling above ears occurred [sic]), blood in stool, fever, feet peeling,
> sudden unusual strength, peeling feet, rash.

*Id.*  In her earlier statement regarding onset, petitioner claimed that Jacob screamed
inconsolably for days causing a hernia following his September 19, 1991 vaccinations
and had "a fever, cold like symptoms, rectal bleeding, feet peeling, and inconsolable
screaming" following his January 6, 1993 vaccinations.  Petitioner's Statement (labeled
Cover Page), filed June 2, 2008, at 1.  In the instant motion, petitioner reported

> [t]he following symptoms occured [sic] within ten days of the DPT, MMR,
> and polio vaccinations: bizzare [sic] behavior, inconsolable screaming,
> fever, peeling feet, diarrhea (I think) and later swelling above ears; in
> which prompted a visit to his pediatrician and was given a shot of an anti-
> biotic that made Jacob's condition to escalate, especially high pitched
> screaming.

Pet. Motion, filed Oct. 14, 2014, at 1.

The medical records indicate Jacob received his September 19, 1991
vaccinations at his two month well child visit.  Pet. Ex. 3, p. 2.  At that visit, it was noted
that he had "gas," "problems drinking [from a] bottle," and was "crying."  *Id.*  He received
his first DTP vaccination, first polio ["OPV"] vaccination, and first Hib vaccination.  *Id.*,
pp. 2, 8.  He was not seen again by his pediatrician until his four month well child visit
when he was observed to be "doing well," "alert," and "vigorous."  *Id.*, p. 2.

For the next 16 months, Jacob visited his pediatrician four more times for well
child visits.  At these visits, he was assessed as a "well child" and described as "doing
well," "alert," and "vigorous."  Pet. Ex. 3, pp. 3-4.  At his January 6, 1993 well child visit,
he was observed to be a "well child" who was "walking well."  *Id.*, p. 4.  He received his
MMR, DTP, OPV, and Hib vaccinations.  *Id.*, pp. 4, 8.

Jacob visited his pediatrician eight days later (on January 14, 1993) for peeling
skin and red feet but none of the other symptoms reported by petitioner were noted.
Pet. Ex. 3, p. 5. Jacob returned for a second sick visit on January 28, 1993 for a cold
and fever of up to 100° Fahrenheit.  At that visit, his temperature was recorded as 98°.
He was diagnosed with an ear infection and an upper respiratory infection ["URI"].  *Id.*
There is no mention of screaming or fever as high as 104° as petitioner later claims.
Jacob's next visit was his two year well child visit on August 17, 1993 when he was
assessed as a "well child" but concerns regarding his speech were noted.  *Id.*, p. 6.

More than one year later while giving Jacob's history, his grandmother reported that in addition to peeling feet, he experienced a temperature of 104° after his January 6, 1993 vaccination and would sometimes scream for a minute to hours at a time.  Pet. Ex. 4, p. 21.  That record also indicates "there has been no seizure or loss of consciousness."  *Id.*  When Jacob's grandmother reported these symptoms to Dr. Rami Amit in September 1996, Dr. Rami Amit opined that "[t]here was no encephalopathic state, according to the information that I received."  Pet. Ex. 6, p. 1.

The medical records filed do not support petitioner's assertions.  Even if supported by the medical records, many of the symptoms petitioner lists are not symptoms of an acute encephalopathy as defined in the QAI.  Symptoms such as "high-pitched and unusual screaming, persistent inconsolable crying, and a bulging fontanelle" are specifically described as insufficient to show an acute encephalopathy. 42 C.F.R. § 100.3(b)(2)(i)(E).  Thus, the record does not support a Table Injury.

Even if it did, Jacob's claim still is untimely by almost 12 years.  Viewing conflicts in the record regarding onset of symptoms of the claimed injury in the light most favorable to petitioner, Jacob displayed symptoms of speech delay in 1993.[18]  This claim was filed on March 27, 2008.  Thus, the petition was filed almost 12 years too late.

### IV.  Conclusion.

Petitioner has not established a basis for granting post-judgment relief.  Although courts have allowed such relief under the catch-all provision of RCFC 60(b), the lack of fault by the moving party was an important factor in granting relief from judgment and affording the party an opportunity to present his or her claim.  S*ee, e.g., Freeman v. Sec'y, HHS*, 35 Fed. Cl. 280 (1996).[19]  Here, petitioner has offered no explanation for her failure to respond to the court's orders.  Furthermore, unlike the petitioners in *Freeman*, petitioner filed medical records which do not support her assertions regarding entitlement and show that the case was filed well after the expiration of the Vaccine Act's statute of limitations.  Even if I granted petitioner's motion it is unlikely that she would prevail on the merits of her case.  Thus, granting the  motion would constitute the empty exercise discussed in *Teamsters*, 953 F.2d at 20.

**The motion for reconsideration and post-judgment relief is DENIED.**

---

[18] As the Federal Circuit noted in *Carson,* speech delay qualifies as "the first objectively recognizable symptom of autism."  *Carson ex rel. Carson v. Sec'y, HHS*, 727 F.3d 1365, 1370 (Fed. Cir. 2013): *see also White v. Sec'y, HHS,* No. 04-337V, 2011 WL 6176064, at *4-9 (Fed. Cl. Spec. Mstr. Nov. 22, 2011) (describing symptoms of autism).

[19] In *Freeman,* the petitioners believed they had hired an attorney to represent them in their claim.  *Id.* at 281-82.  They had paid the attorney $200, provided him with the documents he needed, and assumed he had entered an appearance and was responding to orders on their behalf.  *Id.*  They alleged that they checked with their attorney on several occasions and only learned their claim had been dismissed the month before they filed their motion for post-judgment relief.  *Id.* at 282.  At the time their claim was dismissed, no medical records or other supporting documents had been filed.

**The clerk shall send one copy of this order to petitioner at her address of record and another copy to petitioner at the addressed she provided:**

> **Jenny Shoop**
> **c/o Patricia Shoop**
> **1385 Elkhorn Rd #305**
> **Lake Geneva, WI 53147**

**IT IS SO ORDERED.**


_____
**Denise K. Vowell**
Chief Special Master